821 F.2d 649
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Wilford G. ROGERS, Petitioner-Appellant,
v.
Theodore KOEHLER, individually and as Warden of Marquette
Branch Prison, Respondent-Appellee,
 No. 86-1857
 United States Court of Appeals, Sixth Circuit.
 June 23, 1987.
 
 Before GUY and BOGGS, Circuit Judges, and EDWARDS, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Rogers appeals from the denial of his petition for a writ of habeas corpus. After a careful review of the record, we are convinced that the district court was correct in denying the petition.
 
 
 2
 In the district court this matter was initially referred to a magistrate for a report and recommendation. Magistrate Brenneman prepared a lengthy and careful report in which he addressed individually the many claims of error raised by petitioner. This report was adopted by the district court and we likewise affirm on the basis of the magistrate's report and recommendation with only minimal elaboration as follows.
 
 I.
 
 3
 On January 23, 1967, the nude body of Maud Bondsteel was found in her living room. She had been smothered to death with a pillow; a fork had been plunged into her abdomen several times; her breastbone and ribs were crushed; there was injury to her sexual parts and blood around her vagina. A bloody spatula was lying next to the body.
 
 
 4
 Maud Bondsteel was petitioner's great-aunt and he admitted to the police that he had been at her house the night of the murder but denied he had gained entry. The police found evidence of a forced entry in that the lock to the kitchen door had been broken and pieces of the lock and paint chips from the door were found on the kitchen floor. Petitioner was arrested for the crime and ultimately charged with murder in the first degree.
 
 
 5
 Since there were no eyewitnesses and the crime victim was dead, the case at trial against the petitioner was circumstantial. Some of the more significant pieces of circumstantial evidence included a fresh fingerprint of petitioner (he denied he had been in the house within the previous fifteen months); hair and fiber evidence; paint chips that matched those on the kitchen floor were found in petitioner's jacket; and unexplained scratch marks on petitioner's face, back, and underarm. Rogers' defense at trial consisted primarily of an alibi[1] and lack of any motive for killing his great-aunt.
 
 
 6
 Rogers was convicted after a jury trial and made a direct appeal only to the Michigan Court of Appeals which affirmed his conviction. Several years later (1973), Rogers filed a delayed motion for a new trial in the trial court. After an evidentiary hearing, this motion was denied, as were his appeals from the denial. After a long delay (1978), Rogers filed a habeas petition in federal district court. This petition was denied and no appeal was taken. Rogers then went back to the state courts, essentially exhausting the issues he now raises in this, his second habeas effort, which was finally resolved in 1986. We now conduct appellate review twenty-one years after the original state trial was completed.
 
 
 7
 Since we adopt the opinion of the court below, our purpose in setting out the facts and procedural history is to emphasize the nature of our limited review in a habeas proceeding. Petitioner and his counsel have done a very thorough job of combing the state trial record and picking out every conceivable procedural or substantive error. However, this is done in a manner which suggests this habeas action is just another step in petitioner's appellate review of his state court conviction. For example, he relies almost exclusively on state law which, although relevant in part, is not determinative in our review relating to violations of the Constitution. We are concerned with state errors only to the degree that singly or in combination they so frustrate the concept of a fair trial that it can be said a defendant has been denied due process. For example, petitioner relies very heavily on some jury instructions given without objection dealing with the definition of first degree murder and the differences between first and second degree murder. The trial judge's original instructions were sound but, arguably, he added some definitional confusion when he ad-libbed some additional explanation of these charges. Although the Michigan appellate courts found that no reversible error was committed, the issues raised were the kind that are significant to state appellate courts because they have the responsibility of providing guidance to the state trial courts. Stated another way, state appellate courts want to discourage the use of confusing instructions even if they may constitute harmless error in the case under review.
 
 
 8
 The scope and purpose of federal review is quite different. Our view is an overall one looking to the fundamental fairness of the trial as a whole. In the case sub judice, for example, there is no doubt that a brutal murder was committed under circumstances which make it clear that it would meet the definition of first degree murder in Michigan. Our only purpose in setting out the grisly facts, supra, was to illustrate this fact. Petitioner did not claim provocation, lack of premeditation, or lack of deliberation. He claimed someone else did it. There was no challenge to the factual circumstances surrounding the murder itself. Under such circumstances, a habeas court does not find that fine line definitional differences between the court's original instructions and its supplemental instructions have any impact on the basic issue of whether petitioner was denied a fair trial in the constitutional sense.
 
 
 9
 Similarly, the same type of analysis is applied to ineffective assistance of counsel claims of the type raised here. Habeas courts are not free to deal with alleged individual and isolated lapses in performance. The habeas lawyer is usually not the trial lawyer and it is very easy for one person's strategy to emerge years later as another person's error. Therefore we evaluate on the total performance of trial counsel and the question of prejudice.
 
 
 10
 In the same vein, evidentiary questions such as are raised here are left to the sound discretion of the trial judge. It is a rare trial in which it cannot be argued that certain evidentiary rulings violate some rule of evidence. A laundry list of alleged violations will not carry the day, however, unless their effect is to so thwart and defeat the concept of essential justice that the habeas court can clearly say that due process has been denied.
 
 
 11
 Since we conclude that, when viewed as a whole, Rogers' trial comported with due process concepts, we AFFIRM.
 
 
 
 [1]
 He was technically precluded from this defense by failure to give notice as is required in Michigan